UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHERISE J.,[1]

                               Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
_____

DECISION & ORDER

20-CV-1924MWP

## PRELIMINARY STATEMENT

Plaintiff Cherise J. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 12).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 10). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.   **The ALJ's Decision**

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 17-28).[2] Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 17, 2017, the application date. (Tr. 17). At step two, the ALJ concluded that plaintiff had the following severe impairments: chronic migraines, menorrhagia,[3] posttraumatic stress disorder, and major depressive disorder. (*Id.*). The ALJ also found that plaintiff had several non-severe impairments, including status post fracture of the fifth metatarsal, thyroid disorder with enlarged thyroid, cannabis dependence, hypokalemia, bilateral mastodynia, hypertension, cervical derangement, and hip bursitis. (Tr. 17-18). With respect to plaintiff's mental limitations, the ALJ found that she suffered from moderate limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and, adapting and managing oneself.

---

[2] The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

[3] The record refers to menorrhagia, metrorrhagia, metromenorrhagia, and dysfunctional uterine bleeding. The parties appear to use these terms interchangeably. Documents in the record indicate that menorrhagia "is the medical term for when [one's] menstrual periods are heavy or last longer than usual." (Tr. 366). According to those records, menorrhagia may inhibit a person from maintaining usual activities because of blood loss and cramping. (*Id.*).

(Tr. 18-20).  At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments.  (*Id.*).

The ALJ concluded that plaintiff had the RFC to perform light work with certain limitations.  (Tr. 20-27).  Specifically, the ALJ found that plaintiff could perform simple, routine work and make simple work decisions consistent with SVP 1-2 jobs, not at production rate pace (assembly line); maintain attention and concentration for two-hour blocks of time; tolerate minimal changes in workplace processes and settings; and, occasionally interact with supervisors, coworkers, and the public but could not perform teamwork or tandem work.  (Tr. 20).  As for environmental limitations, the ALJ found that plaintiff could work in a moderate noise level environment as defined in Appendix D of the Selected Characteristics of Occupations but could not perform outdoor work or in a work environment with flashing or flickering light.  (*Id.*).  The ALJ also assessed that plaintiff would require two extra bathroom breaks of about three to four minutes each in addition to regularly scheduled lunch and breaks.  (*Id.*).  At steps four and five, the ALJ determined that plaintiff had no past relevant work but that positions existed in the national economy that plaintiff could perform, including folder, mail clerk, and tagger.  (Tr. 27-28).  Accordingly, the ALJ found that plaintiff was not disabled.  (Tr. 28).

### III.   Plaintiff's Contentions

Plaintiff contends that the ALJ's determination is not supported by substantial evidence and is the product of legal error.  (Docket # 8-1).  First, plaintiff contends that the ALJ's highly specific RFC limitation regarding additional bathroom breaks is not supported by substantial evidence.  (*Id.* at 10-14).  Next, plaintiff maintains that the ALJ's RFC assessment is flawed because she failed to properly incorporate the limitations assessed by consultative

examiner Nikita Dave, M.D. (*id.* at 14-18) and erred in evaluating the opinion of treating provider Mariam Saleh, L.M.S.W. (*id.* at 18-23).

IV.    <u>Analysis</u>

Plaintiff maintains that the bathroom break limitation in the ALJ's RFC finding is not supported by the record. (*Id.* at 10-14). Considering the specific facts of this case, I conclude that the ALJ erred by apparently crediting plaintiff's statements that her impairment required additional breaks throughout the workday but failing to formulate an RFC with limitations that fully accounted for plaintiff's allegations, or at least explain why two additional bathroom breaks (as opposed to more) would suffice. Without further explanation for the apparent discrepancy between plaintiff's statements and the assessed limitation, remand is required.

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

"It is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC." *Jones v. Comm'r of Soc. Sec.*, 2016 WL 2354262, *5 (N.D.N.Y. 2016) (citing 20 C.F.R. §§ 404.1527, 416.945). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in h[er] decision[;] [s]he [i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).

In considering reports of pain and other limitations, the ALJ "is not required to accept the claimant's subjective complaints without question; [s]he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citation omitted). In doing so, the ALJ is permitted to "partially credit [p]laintiff's testimony regarding her own limitations and assess more restrictive . . . limitations than those identified by the consultative examiners," *Mary Diane K. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 270, 276 (W.D.N.Y. 2021), and it is not necessarily error for the ALJ to "give[] a claimant the benefit of the doubt and assess[] limitations more severe than those supported by the medical evidence of record based on the claimant's subjective complaints," *Melissa D. v. Comm'r of Soc. Sec.*, 2023 WL 2364814, *3 (W.D.N.Y. 2023).

Nevertheless, "to enable [a reviewing court] to decide whether the determination is supported by substantial evidence," *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984), an ALJ must sufficiently "explain the link between h[er] RFC assessment and the record evidence," *Paul v. Colvin*, 2016 WL 6275231, *2 (W.D.N.Y. 2016). "Remand may be appropriate . . . where . . . inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013); *see also Wright v. Colvin*, 99 F. Supp. 3d 328, 332 (E.D.N.Y.

2015) ("the crucial factors in any determination must be set forth with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence[;] [t]o fulfill this burden, the ALJ must adequately explain h[er] reasoning in making the findings on which h[er] ultimate decision rests") (quotations and brackets omitted).

Here, the ALJ determined at step two that plaintiff's menorrhagia was a severe impairment. (Tr. 17). In the portions of her decision that address the condition, the ALJ summarized some of plaintiff's testimony and statements, some of the medical records reflecting the condition, and the examination of consultative examiner Dr. Dave. (Tr. 22-23). After this summary, the ALJ concluded:

> The record documents little in the way of further treatment for this condition. While the claimant reported she had inquired regarding a hysterectomy, this is not documented in the record.[4] Nevertheless, in consideration of this impairment, in addition to the exertional, postural and other exertions as outlined in Finding No. 4, the undersigned has also included an additional nonexertional limitation in the residual functional capacity, such that the claimant would require two extra restroom breaks of about three to four minutes each in addition to regularly scheduled lunch and breaks.

(Tr. 23).

None of the medical opinions of record assessed that plaintiff would need additional bathroom breaks, and the ALJ did not identify or explain how she concluded that plaintiff's impairment would be accommodated by two unscheduled breaks. Given the absence of any explanation, the Court is left to deduce that the ALJ derived the assessed bathroom break limitation from plaintiff's statements that her impairment required her to change her menstrual

---

[4] The ALJ was incorrect. The record reflects that plaintiff discussed a hysterectomy with two treating providers who ultimately advised against the procedure. (Tr. 318 ("[a]t this time, it is not appropriate to proceed with surgical management"); Tr. 551 ("I advised pt. against hysterectomy sec. to multiple prior abdominal surgeries, adhesions, and increased surgical risks")).

products frequently. The problem with the ALJ's additional limitation is that it does not appear to be supported by the record evidence; one of plaintiff's most recent reports to a treatment provider about her condition included the statement that she needed to change a pad or tampon every 30-60 minutes for a week. (Tr. 474). The RFC does not, however, fully account for plaintiff's allegations – that is, two additional breaks, in addition to a regularly scheduled morning, afternoon, and lunch break (Tr. 73 (vocational expert testifying that normal breaks include two 15-minute breaks and a half hour for lunch)), would not accommodate plaintiff's need to use the restroom once an hour in a regular eight-hour workday. Without further explanation from the ALJ, this Court cannot discern how the ALJ arrived at the conclusion that two additional bathroom breaks would accommodate plaintiff's menorrhagia; because the record does not permit this Court to meaningfully review the assessed limitation, remand is appropriate.

The medical records show that plaintiff was consistently diagnosed with menorrhagia and that her symptoms apparently intensified, leading to conversations with her providers about various treatments. For example, medical records from 2015 note that plaintiff had excessive and frequent menstruation but a regular cycle. (Tr. 357). Throughout 2017 and 2018, plaintiff repeatedly reported that she often used 14-18 heavy menstrual pads a day (Tr. 282, 291, 316) and that she bled through her clothing throughout the day and night (Tr. 316 (noting that plaintiff bled through her clothing on trip from Buffalo to a doctor's office in Rochester and that plaintiff reported regularly "soaking" her overnight menstrual pads and having "to carry panties with her"); Tr. 550 (noting that plaintiff changed her pad or tampon every 30-60 minutes for a week, had accidents at night and during the day, adjusted her lifestyle because she experienced "gushing and flooding" with walking and changing positions, and bled

products frequently. The problem with the ALJ's additional limitation is that it does not appear to be supported by the record evidence; one of plaintiff's most recent reports to a treatment provider about her condition included the statement that she needed to change a pad or tampon every 30-60 minutes for a week. (Tr. 474). The RFC does not, however, fully account for plaintiff's allegations – that is, two additional breaks, in addition to a regularly scheduled morning, afternoon, and lunch break (Tr. 73 (vocational expert testifying that normal breaks include two 15-minute breaks and a half hour for lunch)), would not accommodate plaintiff's need to use the restroom once an hour in a regular eight-hour workday. Without further explanation from the ALJ, this Court cannot discern how the ALJ arrived at the conclusion that two additional bathroom breaks would accommodate plaintiff's menorrhagia; because the record does not permit this Court to meaningfully review the assessed limitation, remand is appropriate.

The medical records show that plaintiff was consistently diagnosed with menorrhagia and that her symptoms apparently intensified, leading to conversations with her providers about various treatments. For example, medical records from 2015 note that plaintiff had excessive and frequent menstruation but a regular cycle. (Tr. 357). Throughout 2017 and 2018, plaintiff repeatedly reported that she often used 14-18 heavy menstrual pads a day (Tr. 282, 291, 316) and that she bled through her clothing throughout the day and night (Tr. 316 (noting that plaintiff bled through her clothing on trip from Buffalo to a doctor's office in Rochester and that plaintiff reported regularly "soaking" her overnight menstrual pads and having "to carry panties with her"); Tr. 550 (noting that plaintiff changed her pad or tampon every 30-60 minutes for a week, had accidents at night and during the day, adjusted her lifestyle because she experienced "gushing and flooding" with walking and changing positions, and bled

through three sets of clothes on an average day)). The two most recent full medical reports[5] in the record referring to treatment of plaintiff's menorrhagia show that her providers discussed hormonal and surgical management of plaintiff's symptoms, and recommended that plaintiff take a daily prescription and undergo an endometrial biopsy and either ablation or placement of an inter-uterine device.[6] (Tr. 318-19, 551, 554-54).

        Based on my review of the record and the ALJ's decision, it appears that the ALJ partially credited plaintiff's reports that she needed additional bathroom breaks, but nothing in the decision explains the ALJ's determination that two additional breaks would sufficiently accommodate plaintiff's symptoms. As described above, plaintiff's reports indicate to the contrary. Although it is within the ALJ's discretion to weigh plaintiff's testimony and to partially credit her alleged limitations, the ALJ's failure to provide further explanation for her specific finding precludes judicial review and warrants remand.[7] *See Kelly S. v. Comm'r of Soc. Sec.*, 2022 WL 17330779, *5 (W.D.N.Y. 2022) ("[t]he written determination includes no further explanation as to why the ALJ did not afford [p]laintiff additional bathroom breaks in the RFC to accommodate her increased need to use the bathroom[;] . . . [w]ithout further explanation, the Court is left with the impression that the ALJ simply determined, without consideration of the evidence in the record or further explanation, that the typical two breaks and a lunch period would suffice to accommodate [p]laintiff's condition"); *Lynn S. v. Comm'r of Soc. Sec.*, 2022

---

[5] A patient summary report from the Community Health Center of Buffalo indicates that as recent as May 15, 2019, plaintiff reported that her periods were irregular, heavy, associated with severe pain and lasted "> 7 days," and required "7+" pads or tampons a day. (Tr. 563).

[6] It is not clear from the record whether plaintiff pursued the recommended treatment. On remand, the ALJ may wish to consider developing the record regarding plaintiff's recent treatment and the effectiveness of such treatment. (*See also* Tr. 23 ("[t]he record documents little in the way of further treatment for this condition")).

[7] The ALJ's failure to explain the limitation is particularly significant in this case because the vocational expert testified that additional breaks may preclude competitive work. (*See* Tr. 76 ("if they needed to use the restroom each hour, I would say that would be work-preclusive")).

WL 17828844, *8 (W.D.N.Y. 2022) ("the ALJ must *both* identify evidence that supports h[er] conclusion and build an accurate and logical bridge from that evidence to h[er] conclusion[;] . . . [w]here courts are unable to fathom the ALJ's rationale in relation to the evidence in the record, especially where credibility determinations and inference drawing is required by the ALJ, courts will not hesitate to remand for further findings or a clearer explanation for the decision") (quotations and brackets omitted); *cf. Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (finding no basis for ALJ's conclusion that plaintiff could perform sedentary work if he could take a six-minute break every hour where physician did not indicate the length of necessary breaks and plaintiff testified he would need longer breaks) (summary order); *William H. v. Comm'r of Soc. Sec.*, 2021 WL 2980339, *5 (W.D.N.Y. 2021) ("the ALJ did not adequately explain why she assessed the specific and *less* restrictive sit/stand option that she did, . . . and it is not clear what evidence in the record, if any, supports the ALJ's determination[;] [t]he absence of explanation for the specific sit/stand option assessed frustrates meaningful judicial review – that is, whether the highly specific RFC is supported by substantial evidence – and warrants remand"); *Tomicki v. Berryhill*, 2018 WL 703118, *5 (W.D.N.Y.) ("[t]he ALJ did not cite any evidence to support this highly-specific [limitation], nor did the Commissioner identify any such evidence in her motion papers, making it unclear to the [c]ourt how the ALJ arrived at this particular finding"), *report and recommendation adopted by*, 2018 WL 692141 (W.D.N.Y. 2018).

        Having concluded that remand is required, I need not address any other specific challenges to or perceived deficiencies in the ALJ's decision. That said, for the benefit of proceedings on remand, I note that should the ALJ continue to rely upon Dr. Dave's opinion on remand, the ALJ should consider explaining clearly how Dr. Dave's opinion – which assessed

mild to moderate limitations for sustained physical activity such as prolonged standing, walking lifting, carrying, pushing, or pulling heavy objects (Tr. 303) – supports the conclusion that plaintiff is able to perform the exertional requirements of light work.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
March 13, 2023